73 F.3d 361
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Anthony W. GANTT and Cecily Gantt, Plaintiffs-Appellees,
v.
AKRON CORRECTIONS FACILITY, Defendant,
William Meier and Paul Crow, Defendants-Appellants.
 No. 95-3147.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1996.
 
 Before: JONES, DAUGHTREY and PHILLIPS,* Circuit Judges.
 PER CURIAM.
 
 
 1
 This civil rights action was brought under 42 U.S.C. Sec. 1983 by plaintiff Anthony W. Gantt for injuries he suffered while in pretrial detention in the Akron Correctional Facility. The defendants, Sergeant William Meier and Officer Paul Crow, moved for summary judgment based on qualified immunity. The district court denied their motion, finding that the record reflected the existence of genuine questions of material fact requiring review and resolution by a jury. We agree and affirm.
 
 
 2
 Because we conclude that the district court's memorandum opinion fully and correctly addresses the factual and legal issues presented at this stage of the litigation, we find it unnecessary to expound at great length on the questions raised on interlocutory appeal. Summarized, the record shows that Gantt was involved in a traffic accident on the night of July 27, 1992. Akron officers who came to the scene discovered that Gantt had an outstanding warrant for failure to pay a fine in Akron Municipal Court, arrested him, and took him to the Akron Correctional Facility, where he was held when he could not post a bond.
 
 
 3
 Later that night, Gantt reported experiencing shortness of breath and "a tightening in his left arm." Emergency medical technicians were called to the jail, examined Gantt, and directed that he be taken to a local hospital as a "code 1" (by private vehicle rather than ambulance). When the paddy wagon arrived, Gantt was put in leg irons and ordered out of the holding cell where he was being detained. When he complained that he could not walk unassisted and thereafter asked to stop periodically to "catch his breath," his escorts, Meier and Crow, decided he was "malingering" and proceeded to apply what are known as "compliance holds" to move Gantt along.
 
 
 4
 Crow, holding Gantt's left arm, applied a "thumb lock," which he described as a "pain compliance hold," to Gantt's left hand. Meier, on Gantt's right side, applied a "gooseneck hold," in which the wrist is bent severely enough to cause pain and thereby force compliance. Between the two of them, Meier and Crow managed to walk Gantt to the paddy wagon despite his repeated requests to stop momentarily. They situated him on a bench in the rear of the vehicle for his trip to the hospital, leaving him in shackles.
 
 
 5
 Once there, Gantt, a diabetic, was found to have a seriously elevated blood-sugar condition and an injured right wrist. The wrist was thought, at first, to be fractured, but after several x-rays was diagnosed as severely sprained--so severely that Gantt was later evaluated as suffering a 16% impairment of his right arm, or a 10% impairment of his body as a whole. He was still undergoing physical therapy and wearing a wrist brace almost two years after the precipitating incident in the Akron jail.
 
 
 6
 Despite the defendant's insistence that Gantt's claims "do not rise to the level of constitutional violations," we conclude that the plaintiff has made out a case of excessive force sufficient to defeat a motion for summary judgment. Because application of the doctrine of qualified immunity to a particular defendant is a question of law, Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir.1988), this court reviews de novo the district court's determination. Long v. Norris, 929 F.2d 1111, 1113 (6th Cir.1991).
 
 
 7
 The Supreme Court has "reject[ed] [the] notion that all excessive force claims brought under Sec. 1983 are governed by a single generic standard." Graham v. Connor, 490 U.S. 386, 393-94 (1989). "In addressing an excessive force claim brought under Sec. 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Id., 490 U.S. at 394. The standard under which a pretrial detainee's claim of excessive force is evaluated lies in the murky area between the Fourth and Eighth Amendments. "Where ... the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures" of the person.' " Id.
 
 
 8
 Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today. It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. See Bell v. Wolfish, 441 U.S. 520, 535-39 (1979). After conviction, the Eighth Amendment "serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified." Whitley v. Albers, 475 U.S. [312, 327 (1986).]
 
 
 9
 Id., 490 U.S. at 395 n. 10.
 
 
 10
 The appellants urge that their actions should be evaluated under the comparatively lenient Eighth Amendment standard, citing the Fifth Circuit's opinion in Valencia v. Wiggins, 981 F.2d 1440 (5th Cir.), cert. denied, 113 S.Ct. 2998 (1993). In Valencia, a pretrial detainee brought a Sec. 1983 claim that a jail official used excessive force in controlling him during a jail disturbance. After reviewing Graham, the court rejected the Bell v. Wolfish analysis of conditions of pretrial detention, stating that "it does not lend itself to analysis of claims of excessive force in controlling prison disturbances.... [I]t is impractical to draw a line between convicted prisoners and pretrial detainees for the purpose of maintaining jail security." Valencia, 981 F.2d at 1446 (emphasis added). Clearly, Valencia is inapplicable to this case, since Gantt was by no stretch of the imagination guilty of causing a prison disturbance. Moreover, there seems to have been no motive for him to resist: the officers were taking him where he apparently wanted and needed to go. There is, finally, no allegation that he was being unruly or abusive.
 
 
 11
 Moreover, as the district court noted, the officers were in violation of established police policy, as set out in the Akron Corrections Facility's procedural manual. It specifically provided that certain alternative measures (verbal persuasion, verbal warnings of the consequences of non-compliance, and intimidation through a "show of force," i.e., the use of additional personnel) must be tried prior to the imposition of "compliance holds." Aside from asking Gantt to move along, the defendants used none of these alternative methods of compliance.
 
 
 12
 We conclude that the district court's denial of summary judgment was proper for the reasons set out in the court's memorandum opinion. Given the disputed issues of fact in this case, the question of whether the defendants used excessive force is one properly presented to a trier of fact, as is the issue of relative liability as between the two defendants.
 
 
 13
 The judgment of the district court is AFFIRMED, and the case is REMANDED for further proceedings.
 
 
 
 *
 The Hon. J. Dickson Phillips, Jr., United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation