RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0121P (6th Cir.)
File Name: 02a0121p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GLENN W. PHELPS, JR.,
         *Plaintiff-Appellee,*

    *v.*

ROBERT M. COY, JR.,
         *Defendant-Appellant,*

CHRISTIN STUTES, et al.,
         *Defendants.*

No. 00-4257

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 98-00369—Walter H. Rice, Chief District Judge.

Argued: September 11, 2001

Decided and Filed: April 10, 2002

Before: SILER, CLAY, and GIBSON, Circuit Judges.[*]

_____

[*]The Honorable John R. Gibson, Circuit Judge of the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

---

**COUNSEL**

---

**ARGUED:** Lawrence Edward Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellant.   David M. Deutsch, Dayton, Ohio, for Appellee.   **ON BRIEF:** Lawrence Edward Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellant.  David M. Deutsch, Dayton, Ohio, for Appellee.

---

**OPINION**

---

JOHN R. GIBSON, Circuit Judge.  In this case, a civil rights defendant takes an interlocutory appeal from the district court's denial of his motion requesting summary judgment on the ground of qualified immunity.  Glenn Phelps sued Robert M. Coy, Jr., a sergeant in the Xenia, Ohio police department, alleging that Coy used unnecessary force while booking Phelps for a misdemeanor, specifically that Coy threw Phelps to the ground and banged his head against the floor of the police station.   Coy moved for summary judgment, contending that he was entitled to qualified immunity because there was no evidence that his actions were unreasonable, nor that he acted maliciously, for the purpose of causing harm. The district court held that the facts taken in the light most favorable to Phelps indicated that Coy used unnecessary force, in violation of Phelps's clearly established Fourth Amendment rights, and accordingly it denied Coy's qualified immunity motion.  Coy argues that the district court applied the wrong constitutional standard, that the law governing excessive force during booking was not clearly established, and that Coy's actions were not unreasonable.  We affirm.

We state the facts as the district court recited them.  *See Johnson v. Jones*, 515 U.S. 304, 319 (1995) ("When faced with an argument that the district court mistakenly identified

clearly established law, the court of appeals can simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason."). The litigation arises out of the events of August 30, 1997. Coy and Christin Stutes, another Xenia police officer, arrested Phelps for violating a municipal open container ordinance. They put Phelps in handcuffs and took him to the police station for booking. While Stutes was booking Phelps, who was still handcuffed, he asked him to take off his shoes and socks, so Stutes could see if he had anything hidden about his feet. Stutes asked Phelps to lift his feet, but as Phelps tried to comply, one of his feet got close to Stutes's face. Stutes grabbed the foot and pushed it away, but Coy saw the incident and interpreted it as an attempt to kick Stutes. Coy tackled Phelps, and they both fell to the floor, with Coy on top of the handcuffed Phelps. Coy told Phelps not to try to kick one of his officers, and he hit Phelps in the face twice. Then he grabbed Phelps's shirt and banged his head into the floor at least three times. There was no evidence that Phelps posed a threat to Coy or anyone else after Coy was on top of him. Coy then told Phelps to calm down and he helped him to his feet.

Phelps filed suit against Coy, Stutes, the City of Xenia, Eric Prindle (the police chief of Xenia), and the City Commissioners of Xenia, alleging violation of 42 U.S.C. § 1983 (Supp. IV 1998), in addition to various state law claims. The defendants moved for summary judgment. The court granted summary judgment to the City of Xenia and its Commissioners, holding that Phelps failed to raise an issue of fact as to whether Coy's alleged use of excessive force resulted from a custom or policy of Xenia. The City of Xenia and the Commissioners were also entitled to judgment on the state law claims, because of state governmental immunity. As for Prindle, who was a police lieutenant, not chief of police, at the time of the incident, there was no evidence that he encouraged or otherwise participated in the alleged use of excessive force, and so the court entered judgment for him. The court granted Stutes summary judgment on the section

1983 claim because there was no evidence that Stutes had the opportunity to prevent Coy from hurting Phelps.

Coy sought summary judgment on the ground of qualified immunity, arguing that Phelps's excessive force claim had to be evaluated under the objective reasonableness standard of the Fourth Amendment, and that under this standard, Coy had not violated Phelps's constitutional rights. Phelps responded that the claim was governed either by the Fourth or Fourteenth Amendments. Later, in his reply memorandum, Coy argued that the Eighth Amendment should govern Phelps's claim, so that Coy could be liable only if he used force "maliciously and sadistically for the very purpose of causing harm."

The district court held that Phelps's excessive force claim was governed by the Fourth Amendment standard and that under that standard there was an issue of fact as to whether Coy used unreasonable force. The facts, taken in the light most favorable to Phelps, showed that Coy saw Phelps's foot approach Stutes's face, and he concluded that Phelps was trying to kick Stutes. Coy tackled the handcuffed Phelps. As the two fell to the ground, with Coy on top of Phelps, Coy told Phelps he wouldn't be permitted to kick "one of his officers," and Coy hit Phelps in the face twice. Then, "[w]hile holding [Phelps's] shirt collar, Coy proceeded to slam his head into the floor at least three times." The district court concluded that a jury could find that the beating was not necessary to gain control of Phelps: "Coy was on top of [Phelps], who was handcuffed when the incident occurred. There is no evidence that, while in that position, [Phelps] presented a threat to Coy or to any other officer." The court also held that Phelps's right to be free from use of excessive force was clearly established at the time of the events in question. The district court denied Coy's motion for summary judgment.

Coy filed this interlocutory appeal. Phelps moved to dismiss the appeal for lack of jurisdiction and also asked this court for sanctions. We took Phelps's motion with the case.

We affirm the district court's denial of summary judgment. We deny Phelps's motion to dismiss the appeal and for the award of sanctions.

Fabianich, a police officer, for use of excessive force while she was being booked for a misdemeanor. The district court submitted the case to the jury under the Fourth Amendment standard, and the officer did not object to the instruction. He later contended that the jury should have been instructed under the Fourteenth Amendment, rather than the Fourth. We rejected the officer's argument under the plain error standard of review, stating:

> Since the law of this Circuit is unclear as to whether a pretrial detainee can bring a Fourth Amendment excessive force claim or even as to when an arrestee clearly becomes a pretrial detainee, we cannot hold that the trial court committed plain error in instructing the jury (in the 1991 trial) under the Fourth Amendment standard.

*Id.* at 1049 n.6. Although Holmes, like Phelps, was in the process of being booked for a misdemeanor at the time of the alleged use of excessive force, Holmes's case does not mean that the law concerning Phelps's rights was unclear in this circuit. *Holmes* recounts the following facts: "After Holmes was placed under arrest, she was turned over to Sergeant George Fabianich for booking." *Id.* at 1043. This recitation implies that Fabianich was not the arresting officer, and therefore Holmes's case did not fall within the rule we have relied on concerning arrestees in the custody of the arresting officer. We conclude that it was clearly established in 1997 that Phelps enjoyed the protection of the Fourth Amendment during the incident.

Similarly, the unreasonableness of the alleged facts under the Fourth Amendment was clearly established at the time of the events in this case. *See McDowell*, 863 F.2d at 1307; *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994) (unconstitutionality of use of gratuitous force against helpless and incapacitated suspect during arrest well established in 1991). No reasonable officer could have thought the alleged actions were lawful.

## I.

To begin with, we must address Phelps's motion to dismiss this appeal for lack of jurisdiction. The relevant statute, 28 U.S.C. § 1291 (1994), grants appellate jurisdiction over final judgments only, and denial of summary judgment is usually considered an interlocutory order, not a final judgment. *Johnson v. Jones*, 515 U.S. 304, 309 (1995). However, denial of a motion for summary judgment on the ground of qualified immunity may be deemed a final, appealable order by the following reasoning: the qualified immunity doctrine exists partly to protect officials from having to stand trial; a defendant wrongly forced to go to trial loses the benefit of the immunity even if he or she is exonerated after trial; therefore, the order cannot effectively be reviewed after trial and is considered final. *Id.* at 311-12. Accordingly, denial of summary judgment can be appealed immediately, but only if the appeal presents a "neat abstract [issue] of law" rather than the question of whether the record demonstrates a genuine issue of fact for trial. *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998) (quoting *Jones*, 515 U.S. at 317, 319-20). "If . . . the defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal," *id.*; otherwise, we cannot entertain the defendant's arguments, no matter how meritorious they may be.

In this case, Coy clearly has failed to limit his argument to questions of law taking the facts in the light most favorable to Phelps. Coy argues, for instance, that he "did not attempt to injure Phelps and intended to use no more force than was necessary to restrain and control him." If these assertions were crucial to Coy's appeal, we would be obliged to dismiss it for lack of jurisdiction. Where, however, the legal issues are discrete from the factual disputes, we may exercise our jurisdiction to resolve the legal issues only. *Claybrook v. Birchwell*, 274 F.3d 1098, 1103 (6th Cir. 2001). In this case, even taking the facts in the light most favorable to Phelps, Coy does present a series of strictly legal questions: Were

Phelps's rights at the time of the alleged use of excessive force governed by the Fourth Amendment, the Eighth Amendment, or the Fourteenth Amendment? And, whatever our answer to that question, was that answer so clearly established at the time of the events in question that a reasonable officer would have known what standard governed his conduct and that the conduct was wrong under that standard? We conclude that these are the kind of questions that may be raised by interlocutory appeal and that we have jurisdiction over this appeal. We deny Phelps's motion to dismiss and for imposition of sanctions.

## II.

A claim of qualified immunity presents two closely linked questions: whether the defendant violated the plaintiff's rights and whether those rights were clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* Because in this procedural posture we must take the facts in the light most favorable to the plaintiff, these questions are strictly legal and we review them de novo. *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).

To decide whether Phelps presented evidence that Coy violated his constitutional right not to be subjected to unnecessary beating, we must first ascertain the source of that right. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."). Between them, Phelps and Coy have proposed three possible sources: the Fourth Amendment, the due process clause of the Fourteenth Amendment, and the Eighth Amendment. The question of which amendment supplies Phelps's rights is not merely academic, for the standards of liability vary significantly according to which amendment applies. *See*

deference due an officer's on-the-spot decisions, *see Saucier*, 121 S. Ct. at 2158, on the facts as we must take them, there was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was. *See Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) (use of force after suspect incapacitated by mace would be excessive as a matter of law); *McDowell*, 863 F.2d at 1307 (blow with nightstick to handcuffed, unresisting suspect would be gratuitous and therefore unreasonable); *Darnell v. Caver*, No. 97-5297, 1998 WL 416000, at *3 (6th Cir. 1998) (unpublished) (after suspect thrown to ground, unreasonable for officer to lift suspect's head and let it drop to pavement). The facts recited by the district court would permit a finding that Coy inflicted on Phelps a beating that was not only unnecessary, but also would have been recognized as unnecessary by a reasonable officer in his position. These facts would establish a violation of Phelps's Fourth Amendment rights.

## III.

Our inquiry does not end with the determination that the facts alleged would amount to a violation of Phelps's Fourth Amendment rights. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156 (2001). Coy may yet be entitled to summary judgment if Phelps's rights were not clearly established at the time of the incident, or more precisely, if in August 1997 it would not have been "clear to a reasonable officer [in Coy's position] that his conduct was unlawful in the situation he confronted." *Id.*

The legal precedent on which we rely in concluding that Phelps enjoyed the protection of the Fourth Amendment while in the custody of the arresting officers antedates the incident in this case by almost a decade. *See McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988). There is, however, one of our cases which, while we conclude it did not affect the authority of *McDowell*, nevertheless merits discussion. In *Holmes v. City of Massillon*, 78 F.3d 1041 (6th Cir. 1996), Holmes brought a section 1983 suit against

that the Fourth Amendment itself provides weak textual support for such an extension. As the Fourth Amendment protects against unreasonable "seizures," it seems primarily directed to the *initial* act of restraining an individual's liberty, such as an investigatory stop or arrest. (*Graham* itself offers no explicit suggestion as to when a Fourth Amendment seizure comes to an end, although its facts indicate that a seizure under the Fourth Amendment does not end the moment the police gain custody and control over a suspect.)

*Id.* at 1443-44 (emphasis in original and footnotes omitted). From this passage we can see that the *Valencia* court itself would not have considered its reasoning germane to the case of an arrestee in custody of the officers who arrested him. *Valencia* is altogether irrelevant in this case, which does not involve a jail disturbance and which does involve an arrest in progress. Moreover, in *Gantt*, the case of a pretrial detainee who had been incarcerated because he could not post bond, we rejected an invitation to apply the Eighth Amendment in reliance on *Valencia* because "*Gantt* was by no stretch of the imagination guilty of causing a prison disturbance." 1996 WL 6530, at *2. After we have declined to apply the Eighth Amendment standard in the case of an incarcerated pretrial detainee, it should be obvious that we would not apply it in this case.

Applying the Fourth Amendment analysis, there is no doubt that the facts, taken in the light most favorable to Phelps, establish a violation of Phelps's rights. In assessing the reasonableness of Coy's actions, we analyze the events in segments. *Dickerson v. McClellan*, 101 F.3d 1151, 1161-62 (6th Cir. 1996). The relevant segment of this story is what happened after Coy tackled the handcuffed Phelps and was sitting on top of him. The district court held that once Coy was on top of Phelps, there was no evidence that Phelps presented a threat to Coy or any other officer. Although we must always weigh the government's interest justifying the use of force against the individual's interest in avoiding that force, *Cox*, 75 F.3d at 241, and we must add in the measure of

*Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) ("A substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the 'objective reasonableness' test of [the Fourth Amendment]. . . ."). Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between. *See Gravely v. Madden*, 142 F.3d 345, 348-49 (6th Cir. 1998).

If the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard. *Graham*, 490 U.S. at 395. That standard requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure. *Id.* at 396. This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Id.*; *Saucier*, 121 S.Ct. at 2158. The officer's subjective intentions are irrelevant to the Fourth Amendment inquiry. *Graham*, 490 U.S. at 397.

For a plaintiff who was a convicted prisoner at the time of the incident, the Eighth Amendment sets the standard for an excessive force claim. *Id.* at 395 n.10; *Cornwell v. Dahlberg*, 963 F.2d 912, 915-16 (6th Cir. 1992). In contrast to the reasonableness standard of the Fourth Amendment, the Eighth Amendment standard focuses on the official's "obduracy and wantonness," *Whitley v. Albers*, 475 U.S. 312, 319 (1986), asking "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Finally, if a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally applicable due process clause of the Fourteenth Amendment still provides the

individual some protection against physical abuse by officials. *Darrah*, 255 F.3d at 305-06. In particular, "[i]t is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n.10.

The district court correctly determined that the alleged beating occurred during the course of the arrest of a free person, and therefore the parties' rights and liabilities are governed by the Fourth Amendment's reasonableness standard. Coy contends that the Fourth Amendment does not apply to Phelps's case because Phelps had already been arrested when the incident took place. Our cases refute the idea that the protection of the Fourth Amendment disappears so suddenly. At the time of the incident, Phelps was still in the custody of Coy and Stutes, the arresting officers. Stutes was booking Phelps when he asked Phelps to raise his foot, and this was the gesture which Coy mistook for aggression. After the incident, Phelps was booked and released, rather than being incarcerated as a pretrial detainee. We have explicitly held that the Fourth Amendment reasonableness standard governs throughout the seizure of a person: "[T]he seizure that occurs when a person is arrested continues throughout the time the person remains in the custody of the arresting officers." *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988). In *Cox v. Treadway*, 75 F.3d 230, 241 (6th Cir. 1996), Judge Ryan, writing for the court, stated that the constitutional analysis does not instantly change the moment a suspect is subdued by the police and that "creating a different Fourth Amendment standard applicable to the use of force in a post-arrest situation than is applicable to pre-arrest conduct [would introduce] a distinction in meaning of the Fourth Amendment that is found nowhere in its language." While the continuing seizure rule is not universally accepted in other circuits, *see Fontana v. Haskin*, 262 F.3d 871, 879-80 & n.5 (9th Cir. 2001) (detailing circuit split on this issue), it is the law in this circuit and has been since *McDowell*.

Coy argues that Phelps should be classified as a pretrial detainee and that "[t]he standard under which a pretrial detainee's claim of excessive force is evaluated lies in the murky area between the Fourth and Eighth Amendments," quoting *Gantt v. Akron Corr. Facility*, No. 95-3147, 1996 WL 6530 (6th Cir. Jan. 8, 1996) (unpublished). Whatever arguments can be made about pretrial detainees' rights are beside the point in this case, in which the plaintiff was still in the custody of the arresting officers and was never incarcerated. The "murky area" does not begin until the protection of the Fourth Amendment ends, and our precedent establishes that an arrestee in the custody of the arresting officers is still sheltered by the Fourth Amendment.

Coy argued below that the Eighth Amendment governed Phelps's claim. The Eighth Amendment applies to convicted prisoners and so would not apply to Phelps, who was in the process of being booked by arresting officers (for a misdemeanor on which he never was convicted). *Graham*, 490 U.S. at 392 n.6. Coy contends that we should follow *Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993), in which the Fifth Circuit applied the Eighth Amendment standard to the case of a pretrial detainee involved in a prison disturbance. The Fifth Circuit held that, even though the rights of a pretrial detainee are governed by the Fourteenth Amendment's due process clause, *id.* at 1445, there is no reason to treat pretrial detainees differently from convicts in the context of prison or jail disturbances. *Id.* at 1445-46. In debating which standard to apply, the Fifth Circuit explicitly distinguished between incarcerated pretrial detainees and arrestees still in the custody of the arresting officers:

We do not believe that the Fourth Amendment provides an appropriate constitutional basis for protecting against deliberate official uses of force occurring, as in this case, *after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time. Our reasons for so deciding are threefold. First, we believe