Saundra MARTIN, Plaintiff–Appellee,

v.

CITY OF SILVERTON; Tim
Williamson, Defendants–
Appellants.

No. 01–3983.

United States Court of Appeals,
Sixth Circuit.

Aug. 21, 2002.

Before DAUGHTREY and CLAY,
Circuit Judges; and WILLIAMS, District
Judge.*

CLAY, Circuit Judge.

Defendants City of Silverton and Officer Timothy Williamson of the City of Silverton Police Department filed an interlocutory appeal from the order denying their motion for summary judgment on the ground of qualified immunity. Defendants sought to dismiss Plaintiff Saundra Martin's 42 U.S.C. § 1983 claim alleging that Officer Williamson used excessive force when arresting her for disorderly conduct. For the reasons set forth below, we **DISMISS** the appeal for lack of jurisdiction.

## BACKGROUND

The instant action arises from events that occurred in Silverton, Ohio on the night of March 18, 1999. Defendant Timothy Williamson, a City of Silverton police officer, was on routine patrol when, some-

---

* Honorable Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by designation.

time after 11:00 p.m., he noticed a man sitting for over twenty-five minutes in a green Chevrolet Monte Carlo in the empty parking lot of a closed business. Continuing on his patrol, Officer Williamson decided to run the car's license plate through his computer and learned that the car was registered to Enrico Martin (Plaintiff Saundra Martin's son), and that his driving license had been suspended. Just as he returned to the empty parking lot to question Enrico Martin, Officer Williamson saw him leave and travel northbound on Silverton Avenue. Officer Williamson followed Enrico Martin, who parked in front of 6947 Silverton Avenue, where he lived with his mother. At that point Officer Williamson activated his rear lights to initiate a traffic stop. Officer Williamson then approached Enrico Martin to ask him about the status of his driver's license.

Upon seeing Officer Williamson talking with her son, Plaintiff appeared on the porch and asked, "What's going on and what's the problem." Enrico Martin responded by saying, "Mom, just go back in the house, everything is fine." Plaintiff then shouted, "Are they harassing you again?" According to Officer Williamson, he did not respond to Plaintiff; according to Enrico Martin, Officer Williamson stated, "Ma'am this doesn't concern you." After Officer Williamson warned Enrico Martin not to drive the car until he cleared up his suspension, or else he would have to impound the vehicle, he left the scene.

Immediately after Officer Williamson left, Plaintiff called a police supervisor of the Silverton Police Department to complain that Officer Williamson and other police officers in Silverton were continually harassing her son by repeatedly stopping him for questioning without issuing citations. Plaintiff also called the City of Silverton Police Department and requested to speak with Deputy Plummer to complain about the repeated stops of her son and the stop conducted that night. Plaintiff spoke with the dispatcher, telling her that Officer Williamson was harassing her son because he refused to sell his vintage car to the officer and that she wanted to report the officer to the Hamilton County Sheriff's Department for harassment.

Thereafter, Officer Williamson was called by the dispatcher, Claire Gibson, and returned to the police station. At the station, Officer Williamson was informed by Gibson that Plaintiff had called to complain about his traffic stop of Plaintiff's son. Officer Williamson then decided to return to Plaintiff's house presumably to explain to her why he stopped her son.

In the meantime, Plaintiff, after concluding the phone conversation with the police department dispatcher, went outside and sat in her car to await the return of her son, who had left with an acquaintance. Plaintiff then observed a police cruiser passing by her house with a bright spotlight shining on her house, as well as on her neighbors' houses. According to Officer Williamson, he shined a spotlight on the houses so that he could locate Plaintiff's house. Plaintiff stated that after the police cruiser passed by a second time, Officer Williamson stopped and approached her, shining a flashlight in her eyes. According to Officer Williamson, he heard Plaintiff before he saw her, when she shouted at him, "What the f—— do you want now?" At that point, Officer Williamson saw Plaintiff sitting in her white Nissan, parked in front of her house, with the engine running.

Plaintiff and Officer Williamson's gave widely divergent accounts of what happened next. According to Plaintiff, Officer Williamson immediately said, "You are under arrest, [because] you called my boss and tried to get me in trouble." In response, Plaintiff stated that "I am not

doing anything [illegal] by sitting here with my car running." According to Plaintiff, the officer then replied by saying that "you don't call my boss reporting on me" and that "I tried to do your son a favor and give him a break, now you're trying to cause trouble. Get out of the car, you are under arrest." According to Plaintiff, she did not yell or curse at the officer. When she attempted to use her cell phone to call the Hamilton County Sheriff's Department to report Officer Williamson for harassment, he told her to "put the damn phone down." Plaintiff testified that Officer Williamson was constantly checking to make sure that there were no bystanders present. Plaintiff told the officer that she would not get out of her car because she had not committed a crime.

According to Plaintiff, Officer Williamson then reached into the car, attempting to grab the keys to the car. When he saw the headlights of an oncoming car, Officer Williamson left the keys in the ignition. Noticing that her son was a passenger in the oncoming car, Plaintiff felt that it was safe to leave her car. As Enrico Martin approached them, Officer Williamson stated that "[Plaintiff] was under arrest for yelling and cursing."

Plaintiff also testified that in the course of the ensuing altercation, Officer Williamson called for assistance. When Officer Jeff Hagy of the Deer Park Police Department arrived on the scene, he approached and pulled his gun on Plaintiff's son. At that point, Plaintiff, begging her son not to move, received permission from Officer Williamson to hand her purse and cell phone to her son, which allowed the officer to handcuff her. Upon being handcuffed by Officer Williamson, Plaintiff remarked that "what you are doing is wrong, you are totally wrong." According to Plaintiff, Officer Williamson, after shoving her against the car, grabbed both of her handcuffed arms and then slammed her against the car, telling her that "I am arresting you for resisting." When Plaintiff then asked the officer "why he did that," Officer Williamson took one step back and sprayed her in the face with mace. According to Plaintiff, Officer Williamson then said, "How do you like that you black bitch?" Afterwards, Officer Williamson told Plaintiff's son "that he was sorry he had to do that, however, she was trying to cause trouble for him with his boss."

Officer Williamson gave a much different version of the altercation. According to the officer, when he got out of his car, he tried to explain to Plaintiff that he had simply given her son a warning and had not issued a citation. Plaintiff responded by telling the officer to "[g]et that damn light out of my face." According to Williamson, Plaintiff proceeded to become "totally belligerent, gesturing, yelling at the top of her lungs, you guys are always harassing my f-ing son." At that point, Williamson noticed that people in the neighborhood were beginning to come out onto their front porches. Although Williamson tried to explain to Plaintiff why he had stopped her son, Plaintiff constantly interrupted him. After Williamson warned Plaintiff that if she did not quiet down, he would arrest her for disorderly conduct, Plaintiff remained "very loud, very rude and very turbulent."

Williamson stated that at this point, Plaintiff's son returned home. When Williamson saw Enrico Martin get out of the vehicle and head toward the white Nissan, which still had its engine running, he called for police back-up assistance. According to Williamson, Plaintiff continued to be loud, belligerent and profane. Plaintiff then refused Williamson's repeated requests that she turn off her engine and get out of her car. In response, Plaintiff shouted, "You can't arrest me. You ain't

got a reason to arrest me." Plaintiff also refused to comply with Williamson's request that she quiet down. Given Plaintiff's repeated refusals to comply with his requests, Williamson reached into her vehicle, turned off her engine and took her keys, placing them on top of the car. It was only after Enrico Martin approached that Plaintiff got out of her car.

At about the same time, Officer Hagy arrived on the scene as back-up. According to Hagy, Williamson and Plaintiff, who was "gesticulating in an angry manner," were involved in an altercation. According to Williamson, he repeatedly told Plaintiff to put her hands behind her back and advised her that she was under arrest for disorderly conduct. Plaintiff responded by continually saying that "You ain't arresting me. You can't arrest me." When Plaintiff refused to submit to being arrested, Williamson "grabbed her wrists to turn her around, and she would not—and she started to fight me off." At that point, according to Hagy, "Miss Martin did put both of her hands on Officer Williamson's chest and push him away as she's saying, 'You're not arresting me.'" Hagy further testified that Williamson responded with force when Plaintiff pushed him.

During this altercation, Williamson claimed that Plaintiff tried to swing at him with her purse. When that happened, Williamson took about two steps back from Plaintiff, pulled out his mace and "gave her one short burst to the face." As Plaintiff's arms dropped to her side, Williamson clapped the handcuffs on her and walked her to his police cruiser.

Plaintiff was then transported to the police station, charged with disorderly conduct and resisting arrest, and placed in a holding cell. Plaintiff was eventually transported to a hospital in Kenwood, Ohio for medical attention to her eyes, where she was treated and released. Subse-quently, Plaintiff was convicted of disorderly conduct following a criminal trial on October 1, 1999 in the Hamilton County Municipal Court.

Plaintiff filed suit in federal district court on April 11, 2000 against the City of Silverton, Silverton Police Officer Timothy Williamson, the City of Deer Park and Deer Park Police Officer Jeff Hagy claiming excessive force, inadequate training and supervision, and deprivation of her rights and privileges under the Fourth and Fourteenth Amendments of the U.S. Constitution in violation of 42 U.S.C. § 1983, as well as state law claims for abuse of process. On March 29, 2001, Defendants City of Deer Park and Officer Hagy moved for summary judgment on all allegations presented in Plaintiff's complaint. Defendants City of Silverton and Officer Williamson also moved for the same on April 2, 2001, alleging qualified immunity. Plaintiff filed her response to both motions for summary judgment on May 14, 2001. On June 5, 2001 and June 14, 2001, Defendants City of Deer Park and Officer Hagy and Defendants City of Silverton and Officer Williamson filed their respective reply memorandums. Thereafter, on July 24, 2001 and August 3, 2001, Defendants City of Deer Park and Officer Hagy and Defendants City of Silverton and Officer. Williamson, respectively, filed their notice of supplemental authority in support of their motions for summary judgment, citing the U.S. Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

On August 15, 2001, the district court granted Defendants City of Deer Park and Officer Hagy's motion for summary judgment, but denied Defendants City of Silverton and Officer Williamson's motion for the same, finding that Officer Williamson was not entitled to the defense of qualified immunity on Plaintiff's 42 U.S.C. § 1983

claim that he used excessive force when arresting her. Defendants City of Silverton and Officer Williamson filed a timely appeal.

## DISCUSSION

As a preliminary matter, we must address whether this Court has jurisdiction over the present appeal. Generally, a district court's denial of a claim of summary judgment is not considered to be an appealable final decision within the meaning of 28 U.S.C. § 1291. *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir.2002) (citing *Johnson v. Jones*, 515 U.S. 304, 309, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)). However, a denial of a motion to dismiss based on qualified immunity may be deemed "a final appealable order" under 28 U.S.C. § 1291 if the appeal presents "a neat abstract issue of law" rather than a question of whether the record demonstrates a genuine issue of fact for trial. *Id.* (citing *Johnson*, 515 U.S. at 317, 319–20). In this case, it does not appear that we have jurisdiction over this appeal because it does not present a "neat abstract [issue] of law," but rather a question of whether the record demonstrates a genuine issue of fact for trial. *Id.*

## CONCLUSION

Accordingly, we dismiss the instant appeal for lack of jurisdiction.