NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0239n.06

Case Nos. 17-1481, 17-1610

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
May 14, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| RENEE NEWELL; MICHAEL A. STEVENSON, Bankruptcy Trustee, Real Party in Interest, | ) ) ) ) | |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) ) | |
| WAYNE COUNTY; RAY JOHNSON; ALEX CHAHINE; JOHN DOE I; JOHN DOE II; BENNY NAPOLEON; DON FARRIS, | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendants, | ) ) ) | |
| IRA TODD; DENNIS RICHARDSON, | ) ) ) | |
| Defendants-Appellants. | ) | |

BEFORE: GUY, SUTTON, and COOK, Circuit Judges.

COOK, Circuit Judge. After officers searched her home for evidence of slanderous writings, Renee Newell sued. She alleges that Detroit police officer Ira Todd, supervised by Wayne County Sheriff's Department Deputy Chief Dennis Richardson, knowingly or recklessly included false information in the affidavit underlying the search warrant. Both officers moved for summary judgment on qualified immunity grounds, but the district court was unpersuaded. Finding immunity warranted, we REVERSE.

## I.   BACKGROUND

### A.  Facts

Newell was the Wayne County jail's Internal Compliance Manager until her firing in May 2012 for misconduct and lying in an internal affairs investigation.  She did not go quietly.  Newell insisted to multiple Wayne County Sheriff's Department (WCSD) staff that she was the victim of a "set up" and accused WCSD Executive Chief Eric Smith of misconduct.

Approximately two months after Newell's termination, the sheriff and others at the WCSD received an email from pseudonymous author "Tom Truth."  Attaching a criminal docket sheet from PACER, the email accused Smith of using "a large amount of money and superior connections" to dodge prosecution in a long-pending federal criminal case.  The department reviewed the allegations against Smith and found them false.  The sheriff then ordered an inquiry into the email's origin.  Todd led the probe; Richardson supervised.

At Richardson's request, Sergeant William Liczbinski of the WCSD's Internet Task Force determined that the Tom Truth email had been sent through a TOR network, meaning that the email had traveled through thousands of computers worldwide before arriving in recipients' inboxes, making it untraceable.  But when he scrutinized the email's attached PACER docket, Liczbinski found the document's "author" listed as one "Renee Newell."  According to Liczbinski, this meant that "the document was authored on a computer that at one time was registered to somebody named Renee Newell."  He explained that the appearance of someone's name in the "author" field of a document's properties, although not definitive, "may give you some indication of the author."

Todd and Richardson knew that Liczbinski could not definitively confirm who created the attachment.  Given the circumstances, however—such as Newell's recent firing—Todd

decided that the attachment's properties identified *the* recently-fired Renee Newell as the author. The properties also showed that the document was created shortly after midnight, leading Todd to infer that Newell likely created it in her home.

Todd thought Newell's involvement in the creation of the Tom Truth email could violate several Michigan statutes, including prohibitions on criminal slander and "[m]alicious annoyance by writing." Seeking more evidence, he prepared a search warrant affidavit. The relevant parts of the affidavit explained:

- That Newell had recently been fired;
- That various WCSD staff received the Tom Truth email;
- That the email was untraceable, but "the document attached to the email was created by the terminated employee identified as Renee Newell";
- That "the document authored by Renee Newell was created at 12:12:24 am and the email was sent at 1:37 am. Because of the late hours and the document being created in the middle of the night, it is reasonable to believe that the documents were created at Renee Newell's residence"; and
- That Newell had sent letters and emails to WCSD personnel, and that "[t]he theme of [her] language [in these messages] is consistent with the language used in the [Tom Truth] email and . . . the document authored by Renee Newell."

Moreover, he swore that there was "probable cause to believe that additional and supporting evidence" would be found at Newell's home. Richardson reviewed the application and affidavit before Wayne County prosecutors signed off.

A magistrate approved the warrant, and officers executed it without incident. Among other things, law enforcement recovered a copy of the PACER docket attached to the Tom Truth email, along with a letter from PACER administration showing that Newell had recently opened an account. Nonetheless, prosecutors never charged Newell.

### B. Procedural History

Newell sued several defendants in state court, alleging § 1983 violations along with state law claims for gross negligence and intentional infliction of emotional distress. After removing to federal court and conducting discovery, defendants moved for summary judgment. Todd and Richardson contended that they were entitled to qualified immunity as to Newell's § 1983 claims and Michigan governmental immunity with respect to her state law claims.

The court granted summary judgment to all defendants save Todd and Richardson, deciding that Newell's claims against each presented genuine disputes of material fact. Their interlocutory appeals occasion our review.

## II. DISCUSSION

### A. Standard of Review

We "review de novo the denial of summary judgment on the basis of qualified immunity." *Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017). Denials of governmental immunity under Michigan law are likewise reviewed de novo. *Id.* Summary judgment may only be granted where "there is no dispute as to a material question of fact and one party is entitled to a judgment as a matter of law." *Ewolski v. City of Brunswick*, 287 F.3d 492, 500 (6th Cir. 2002) (internal citation omitted). "Viewing all facts and inferences drawn therefrom in the light most favorable to the nonmovant, [we] then determine[] whether the evidence presented is such that a reasonable jury could find for that party." *Id.*

### B. Qualified Immunity for Fourth Amendment § 1983 Claim

Newell claims that Todd made intentionally or recklessly false statements in his affidavit and that these statements were critical to the magistrate's probable cause determination. From

this, she argues the warrant's invalidity and the ensuing search's illegality, violating her Fourth Amendment rights.

Finding a material factual dispute, the district court denied Todd summary judgment—and, therefore, qualified immunity. It also denied Richardson qualified immunity because he controlled the investigation and approved Todd's warrant application. Richardson does not contest his supervisory liability. Thus, if Todd is entitled to qualified immunity, so too Richardson.

We evaluate assertions of qualified immunity using a two-part process. First, the facts, taken in the light most favorable to the plaintiff, must demonstrate that the defendants violated the plaintiff's constitutional rights. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). Second, those rights must have been "clearly established at the time of the alleged violation." *Id.* Once a defendant asserts the right, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to [it]." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). As the Supreme Court observed, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

We tackle the constitutional-violation question first. Under *Franks v. Delaware*, Newell must make a "substantial preliminary showing" that Todd "knowingly and intentionally, or with reckless disregard for the truth" included a false statement in the warrant affidavit. 438 U.S. 154, 155–56 (1978). "Allegations of negligence or innocent mistake are insufficient." *Id.* at 171. Whether Newell makes this initial showing is a question of law for the court. *See Hale v. Kart*, 396 F.3d 721, 726–27 (6th Cir. 2005) ("Therefore, our inquiry is whether the plaintiff made a

strong preliminary showing that the affiant intended to mislead the judge . . . . Only then can we address the question of whether a factual matter related to probable cause exists that would preclude summary judgment.").

Only if she clears that hurdle do we proceed to *Franks*'s second step—excising the "material that is the subject of the alleged falsity or reckless disregard." *Franks*, 438 U.S. at 171–72. If the remainder of the affidavit is insufficient to establish probable cause, then the warrant violates the Fourth Amendment. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Richardson contends that Newell failed to show by a preponderance that Todd included any materially false statements in his warrant affidavit, either "knowingly and intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155. Reviewing each allegedly false statement in turn, we agree.

### 1. Newell Described as the Author of the PACER Docket Attachment

Three times Todd's warrant affidavit states without qualification that Newell created the PACER docket attached to the Tom Truth email:

> Sgt. Liczbinski was able to determine by examining the properties of the attached document that the document **was authored and created by Renee Newell**[1] on 7-20-12 at 12:12:24 am and the emails were sent out at around 1:37 am.
>
> ***
>
> The email address (tom_truth@rocketmail.com) was created to avoid detection. However, Investigators were able to determine that the document attached to the email **was created by the terminated employee identified as Renee Newell.**
>
> ***
>
> Finally, Investigators were able to determine that the document **authored by Renee Newell** was created at 12:12:24 am and the email was sent at 1:37 am.

Liczbinski testified that the only thing the "author" field of the attachment's properties proved is that "the document was authored on a computer that at one time was registered to

---

[1] Bold emphases are ours throughout this opinion.

somebody named Renee Newell."  Todd and Richardson were aware of Liczbinski's interpretation.  Newell thus argues that Todd made false statements, at least to the extent that he definitively declared that she authored the email attachment.

But, as Richardson argues, what matters for establishing probable cause is not whether a particular piece of evidence *proves* something.  Rather, what matters is whether the evidence establishes "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'"  *Florida v. Harris*, 568 U.S. 237, 244 (2013) (alteration in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 241 (1983)).  So it is of no consequence that Liczbinski could not *prove* who created the attachment.  Both Richardson and Todd testified that they believed the presence of the name "Renee Newell" in the author field amounted to strong evidence of *the* Renee Newell's involvement in the document's creation.  Todd further testified that he "made a reasonable inference" that the Renee Newell who authored the attachment and the Renee Newell who had recently been fired from the Wayne County Jail were one and the same.

Todd was not out of bounds.  Even if his averments were technically inaccurate, they were a reasonable interpretation of the significance of seeing the name "Renee Newell" in the attachment's properties.  And given that, in her brief, Newell "waives any claim that Defendants Todd and Richardson omitted evidence" that would weigh against probable cause, we cannot see how Todd's statements can be legitimately labelled "false."  Newell has therefore failed to make the "substantial preliminary showing" required by *Franks* step one.  438 U.S. at 155–56.

The only borderline averment is Todd's statement that "Sgt. Liczbinski was able to determine by examining the properties of the attached document that the document was authored and created by Renee Newell . . . ."  We acknowledge this attributes a deduction to Licszbinski

that he specifically disclaimed as "inaccurate." But excising this particular statement would not alter the "only . . . reasonable determination"—that the remainder of the affidavit amply supports probable cause. *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989).

### 2. *Misstatements that the Tom Truth Email Was Sent at 1:37 A.M.*

Newell next pinpoints two statements in the affidavit declaring that the Tom Truth email was sent at 1:37 A.M. as materially false. Todd admits he mistakenly typed "1:37 am" instead of "1:37 pm." Of the two typos, Newell emphasizes the following:

> Finally, Investigators were able to determine that the document authored by Renee Newell was created at 12:12:24 am and the **email was sent at 1:37 am. Because of the late hours and the document being created in the middle of the night, it is reasonable to believe that the documents were created at Renee Newell's residence . . . .**

She claims this typo amounts to a materially false statement because it links the creation of the email to her house, thereby providing probable cause for the search. But, as Richardson points out, an A.M./P.M. typo is precisely the sort of "negligence or innocent mistake[] . . . insufficient to demonstrate that an affiant made a deliberately false statement." *See Franks*, 438 U.S. at 171. Plus, Todd used the correct time elsewhere in the warrant affidavit. On this score, Newell's claim fails.

### 3. *Supposed "Consistent Theme" Between Newell's Prior Writings and the Tom Truth Email*

Newell asserts that Todd's description of a "consistent theme" between Newell's previous correspondence with WCSD staff and the Tom Truth email amounts to another deliberately or recklessly false statement. Todd's affidavit included the following:

> Investigators also learned that Renee Newell emailed a series of emails from May 29, thru May 31, 2012, to Capt. Alan Bulifant requesting the return of her personal property. In one of those emails dated May 31, 2012 at 9:02am [sic], Renee Newell states' [sic] "Surely after all this stuff I've been through, the last thing I need is to be is [sic] thrown on the ground, belly slammed, handcuffed,

and arrested. Although I'm sure that would make Owen, Heard, Smith and Pfannes's day, maybe a couple others." It is clear from this and other documents authored by Renee Newell that she is blaming the Wayne County Sheriff's Office Executives, and specifically Director Patrick Owen, Undersheriff Daniel Pfannes, Chief Jeriel Heard and Executive Chief Eric V. Smith for her termination.

In an email to Capt. Alan Bulifant, Renee Newell accused the [sic] Capt. Bulifant of ambushing her during an interrogation and arguing the fact that she concealed the incarceration of her brother in the jail. One email sent by Renee Newell went on to say that the lies and allegations were trumped up by the above executives and a few other corrupt powerbrokers. **The theme of this language is consistent with the language used in the email and document attached with the fictitious email address tom_truth@rocketmail.com and the document authored by Renee Newell.**

Although the district court determined that "Todd's representation of a common theme may constitute a deliberate falsehood or fabrication," we conclude otherwise. As Todd and Richardson see it, Todd was simply interpreting some of the evidence, opining that there were commonalities between Newell's earlier communications and the Tom Truth email. He "sought to link Newell's anger regarding her termination from the WCSD [to] her involvement in the plot to harass . . . the Sheriff." And as they note, "[t]he magistrate was certainly free to reject the evidentiary inference." In response, Newell only manages conclusory allegations that there was no "common theme" with her other correspondence and that Todd's statements to that effect amount to a fabrication of grounds for probable cause. But *Franks* requires more from her, because "the challenger's attack must be more than conclusory." 438 U.S. at 171. We deem this portion of the affidavit well within the protected range of decisions entitled to qualified immunity.

## C. Governmental Immunity for State Law Claims

The district court also denied Todd's and Richardson's governmental immunity-based motions for summary judgment as to Newell's state law claims. But Newell has unequivocally

abandoned those claims. During a hearing in open court, counsel for Todd, Richardson, and Newell agreed—and the district court confirmed three times—that Newell was abandoning all claims save her Fourth Amendment § 1983 claim. Newell reiterates her abandonment in her appellate brief. The district court erred in refusing summary judgment on these claims. *Cf. Fed. Deposit Ins. Corp. v. St. Paul Fire & Marine Ins. Co.*, 942 F.2d 1032, 1038 (6th Cir. 1991) ("Stipulations voluntarily entered by the parties are binding, both on the district court and [the court of appeals.]").

### III.    CONCLUSION

For these reasons, we REVERSE the district court's denials of summary judgment and REMAND for entry of summary judgment based on qualified and governmental immunity.