BOGGS, Circuit Judge,
dissenting.
Because I believe there are factual disputes that go to the heart of whether the force employed by Officer Rawson in handcuffing Bozung was reasonable, I cannot join the majority opinion. Viewing the facts in the light most favorable to Bozung, Officer Rawson’s conduct was objectively unreasonable and violated a clearly established constitutional right. I would therefore reverse the grant of summary judgment for Rawson and remand for further proceedings.
Rawson is entitled to summary judgment if he did not violate Bozung’s constitutional right to be free from excessive force. As the majority correctly explains, the reasonableness of arresting officers’ use of force depends on the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). “Authorities must be allowed ‘to graduate their response to the demands of any particular situation.’ ” United States v. Montoya de Hernandez, 473 U.S. 531, 542, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (quoting United States v. Place, 462 U.S. 696, 709 n. 10, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). Law enforcement surely has an interest in securing a suspect. If an individual suspected of a minor crime puts up even a low level of resistance to arrest, he may be subjected to some force. Wysong v. City of Heath, 260 Fed.Appx. 848, 854-55 (6th Cir.2008).
Our case law makes it clear, however, that there is no government interest in tackling someone who is compliant and not attempting to flee. See Pershell v. Cook, 430 Fed.Appx. 410, 415 (6th Cir.2011) (knocking suspect to the ground was un *522 reasonable when suspect “did not resist arrest or pose an immediate danger to officers”); Kijowski v. City of Niles, 372 Fed.Appx. 595, 600 (6th Cir.2010) (use of Taser against suspect presenting no risk of harm unreasonable); Lawler v. City of Taylor, 268 Fed.Appx. 384, 386-87 (6th Cir.2008) (officer’s “use of force in throwing [suspect] to the floor was disproportionate to any threat he faced,” given that suspect had merely insulted officer and “raised his left arm slightly”); Smoak v. Hall, 460 F.3d 768, 784 (6th Cir.2006) (unreasonable to tackle cuffed and compliant suspect); Solomon v. Auburn Hills Police Dep’t, 389 F.3d 167, 174 (6th Cir.2004) (attempting leg sweep and shoving plaintiff against wall unreasonable when plaintiff was complying with the officers’ demands); McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir.1988) (unreasonable to strike unresisting suspect).
Although the true version of what happened between Bozung and the officers is certainly disputed, on summary judgment the facts must be viewed in the light most favorable to Bozung. In my view, Bozung has alleged facts and provided evidence sufficient to justify the conclusion that there is a genuine issue of material fact as to whether Rawson violated his Fourth-Amendment rights by using the straight-arm bar takedown technique when Bozung was not resisting arrest, and when Rawson could not reasonably have concluded that he was doing so.
Rawson stopped Bozung’s vehicle for a trivial infraction. Although the driver fled, and Bozung had an outstanding warrant, Rawson had no reason to believe that Bozung had committed a serious crime. Bozung did not attempt to flee. Instead, after parking, he exited the truck and moved to the back of the vehicle as directed. Bozung did not threaten Rawson, and there was no evidence that he had a weapon. According to Rawson’s deposition testimony, Bozung was “calm and collected” and was not “boisterous or combative in any way.” Bozung exited the vehicle slowly, holding onto the truck bed for balance. Neighbor James Leggions testified in his deposition that Bozung was “off balance” and “walked like he had a problem with his legs.” Bozung advised Rawson that he had had a total hip replacement and had a plate and screws in his right ankle. Onlookers also shouted that Bozung was handicapped.
I agree with the majority that we must assume that Rawson told Bozung to place his hands behind his back, even though Bozung argues on appeal that he never received such an order. Bozung stated in his deposition that he did not recall receiving an order from Rawson to put his hands behind his back. Bystanders Leggions and Melonie Harris did not report hearing such an order. Bozung’s lawyer, however, argued to the district court that Bozung was ordered to place his hands behind his back but, given his disability, needed more time to comply with the order. Bozung’s response to the defendants’ motions for summary judgment states that Rawson ordered him “to walk to the rear of the vehicle and to place his hands behind his back to be cuffed.” Bozung cannot present a new argument on appeal. See Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 329 (6th Cir.2006) (“Allowing [plaintiff] to present a new theory of her case on appeal that was not alleged below would permit her two bites at the apple, a practice that would be very disruptive of orderly trial procedure.”).
The majority’s reliance on Scott v. Harris is misplaced. The record shows that “opposing parties [have told] two different stories,” and a “genuine” dispute as to the sequence of events exists. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 *523 L.Ed.2d 686 (2007) (citing Fed.R.Civ.P. 56(c)). Even if we assume Bozung received an order to place his hands behind his back, whether Rawson’s actions were reasonable turns on disputed issues of fact. We do not know how clear and forceful the order was, nor how long Rawson gave Bozung to comply with the order before taking him to the ground. The majority emphasizes Bozung’s “concession” in his deposition that he stood outside the truck for “maybe ... two to three minutes” before he was taken to the ground, construing this delay as evidence that Bozung resisted Rawson’s order. But we must view the facts as a whole in the light most favorable to Bozung, not simply pounce on any detail that could weaken his case. Officer Wilson’s testimony suggests that the delay was shorter: he estimated that “at least 30 seconds passed” between the time that Rawson gave Bozung the instruction and when he performed the takedown maneuver. Leggions testified that “after [Bozung] got almost around his truck, [Rawson] ran over and thr[ew] him to the ground.” Even if Bozung was out of the truck for two minutes, moreover, we do not know how long after he exited the truck the order to place his hands behind his back was given. There is also a factual dispute as to whether Bozung struggled when Rawson attempted to handcuff him. The plaintiffs version of events is not “blatantly contradicted by the record,” and a “reasonable jury could believe it.” Ibid. With so much uncertainty as to what actually happened, the “facts must be viewed in the light most favorable to the nonmoving party.” Ibid.
More importantly, there are disputed facts regarding whether Bozung’s handicap and his inability to comply at once with Rawson’s order should have been apparent to Rawson. Bozung, Officer Wilson, and Ms. Harris all testified that Bozung indicated to Rawson that he was attempting to comply with the order. Bozung stated in his deposition that he told Rawson he was disabled and said, “it’s going to take me a few minutes.”' Harris stated that Bozung yelled, “wait and minute, wait a minute,” but that Rawson responded, “well, I guess you want this done the hard way” and grabbed him. Officer Wilson testified that Bozung responded to Rawson’s command to place his hands behind his back by saying “I am, I am.” According to Bozung, Rawson ignored these protests and slammed him to ground with sufficient force to lacerate his forehead and fracture his hand. Construing the facts in the light most favorable to Bozung, a jury could find, in light of Bozung’s handicap and lack of resistance, that it was unreasonable for Rawson to perform the takedown maneuver to handcuff Bozung, and that Rawson’s conduct thus violated Bozung’s Fourth-Amendment rights.
Furthermore, Rawson is not entitled to qualified immunity. A “defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established.” Morrison v. Bd. of Trs. of Green Twp., 583 F.3d 394, 400 (6th Cir.2009). A right is clearly established if “the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Binay v. Bettendorf, 601 F.3d 640, 646-47 (6th Cir.2010). The facts, taken in the light most favorable to Bozung, would permit a finding that the force Rawson used was not only unnecessary, but would have been recognized as such “by a reasonable officer in his position.” Phelps v. Coy, 286 F.3d 295, 302 (6th Cir.2002). The right to be free from excessive force is clearly estab *524 lished, see Graham, 490 U.S. at 394-95, 109 S.Ct. 1865, as is “the right to be free from physical force when one is not resisting the police,” Wysong, 260 Fed.Appx. at 856. Here, there is a genuine issue of material fact as to whether Bozung resisted arrest. If he did not resist, a reasonable officer would have known that it was unnecessary to force him to the ground to handcuff him. The grant of summary judgment for Rawson was therefore improper.