RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0089p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

HEALTH ONE MEDICAL CENTER, EASTPOINTE P.L.L.C.,
a Michigan Professional Limited Liability Company,
individually and as the representative of a class of
similarly-situated persons,

*Plaintiff-Appellant*,

    *v.*

MOHAWK, INC.,

*Defendant*,

BRISTOL-MYERS SQUIBB COMPANY; PFIZER INC.,

*Defendants-Appellees*.

No. 17-1973

———————

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:16-cv-13815—Judith E. Levy, District Judge.

Decided and Filed:  May 9, 2018

Before:  SUHRHEINRICH, GIBBONS, and KETHLEDGE, Circuit Judges.

———————

**COUNSEL**

**ON BRIEF:**    Phillip A. Bock, David M. Oppenheim, BOCK, HATCH, LEWIS
& OPPENHEIM, LLC, Chicago, Illinois, for Appellant.  Debra Bogo-Drnst, Michele Odorizzi,
Christopher J. Ferro, MAYER BROWN LLP, Chicago, Illinois, for Appellee Bristol-Myers
Squibb Company.  Rebecca J. Schwartz, Molly S. Carella, SHOOK, HARDY & BACON L.L.P.,
Kansas City, Missouri, for Appellee Pfizer Inc.

———————————

**OPINION**

———————————

KETHLEDGE, Circuit Judge.   Some questions seem to arise only in class-action lawsuits.   Here, a seller of prescription drugs sent junk faxes to various medical providers, advertising the seller's prices on various drugs.   The question presented is whether—for purposes of the Telephone Consumer Protection Act, which makes it unlawful "to send . . . an unsolicited advertisement" to a fax machine—the manufacturers of those drugs "sent" those faxes even though they knew nothing about them.   The district court answered no, and so do we.

Mohawk Medical, a pharmaceutical wholesaler, sent two unsolicited faxes to Health One Medical Center.   The faxes listed Mohawk's contact information and offered discount prices on 14 different drugs, including one manufactured by Bristol-Myers Squibb (Bristol) and another by Pfizer.   Health One later brought this putative class-action lawsuit, at first asserting claims only against Mohawk, which never answered the complaint.   Hence the district court entered a default judgment against it.   Health One then amended its complaint to assert claims against Bristol and Pfizer—largely on the theory that they had "sent" the unsolicited faxes simply because the faxes mentioned their drugs.   Those defendants filed motions to dismiss under Civil Rule 12(b)(6), which the district court granted.   We review that decision de novo.   *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018).

The relevant text of the Act is straightforward:

> It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement[.]

47 U.S.C. § 227(b)(1)(C).   Thus, to be liable under this provision, a defendant must "use" a fax machine or other device "to send . . . an unsolicited advertisement" to another fax machine.   We focus here on the word "send," which the statute does not define.   Hence we give "send" its ordinary meaning.   *United States v. Zabawa*, 719 F.3d 555, 559 (6th Cir. 2013).   "Send" has two relevant meanings when used (as here) as a transitive verb.   The first is "[t]o cause to be

conveyed by an intermediary to a destination[.]"  The American Heritage Dictionary 1642 (3d ed. 1992).  For example, one might send a letter by courier, or by the U.S. Postal Service. A second meaning is "[t]o dispatch, as by a communications medium[.]"  *Id.*  For example, one might "send a message by radio[,]" *id.*, or—more to the point here—send a message by fax.

Here, Bristol and Pfizer neither caused the subject faxes to be conveyed, nor dispatched them in any way.  Instead only Mohawk did those things.  Bristol and Pfizer therefore did not "send" the faxes and thus have no liability for them.

Yet Health One argues that Bristol and Pfizer were each a "sender" of the faxes, as an FCC regulation defines that term.  That regulation purports to define "sender" for purposes of the Act as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."  47 C.F.R. § 64.1200(f)(10).  Health One says that the drug companies here were "senders" of the Mohawk faxes because the faxes quoted Mohawk's prices for their drugs and thus (Health One says) the faxes "advertised or promoted" the drugs.  The latter contention is dubious even on its own terms:  the faxes touted Mohawk's discounted "AUGUST PRICES" for the drugs, rather than any feature or quality of the drugs themselves.

But more importantly, Health One reads the regulation woefully out of context. A regulation's context of course includes the statutory text it aims to implement.  *See Utility Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2442 (2014).  Here, the statutory text makes clear that, to send a junk fax in violation of 47 U.S.C. § 227(b)(1)(C), one must "use" a fax machine or other device to convey or dispatch an unsolicited advertisement to another fax machine.  Those requirements—the use of a fax machine or other device, and the sender's own responsibility for the conveyance or dispatch—are ones that the agency must enforce, not elide.

The agency enforced those requirements here.  Read in the context of the statute itself, the regulation does not strip the "send" out of "sender."  Instead, the regulation purports to allocate liability in cases where the party that physically sends (*i.e.*, dispatches) the fax and the party that *causes* it to be sent are not one and the same.  That situation typically arises when a person or company hires a fax broadcaster, "which transmit[s] other entities' advertisements to

telephone facsimile machines for a fee[.]"  71 Fed. Reg. 25,967, 25,971 (May 3, 2006) (codified at 47 C.F.R. pt. 64).  Both kinds of entities appear to meet the statutory requirement of "send": the broadcasters because they in fact dispatch the advertisements via fax, the hirers (for lack of a better term) because they cause the fax to be conveyed.  In this statutory context, the regulation by its terms would allocate liability under § 227(b) first to the hirers, as the party "whose goods or services are advertised or promoted in the unsolicited advertisement[,]" or as the party who otherwise put the broadcaster up to sending the fax (*i.e.*, "the person or entity on whose behalf" the junk fax was sent).  47 C.F.R. § 64.1200(f)(10).  The FCC itself reads the regulation the same way.  *See* 71 Fed. Reg. at 25,971.

Whether the regulation is valid to the extent it exempts broadcasters from liability for junk faxes might be open to question.  (The FCC's "synopsis" for the regulation more or less says that broadcasters are jointly liable only for faxes that they knowingly send as junk.  *See id.*)  But whether the regulation lawfully *exempts* certain senders (namely, innocent broadcasters) from liability under § 227(b) is not the question before us today.  What matters is that—read in the context of the statute itself—the regulation does not purport to *impose* liability upon parties that did not "send" the fax at all.  Here, Bristol and Pfizer neither dispatched the faxes nor caused them to be sent; instead Mohawk did both.  Thus only Mohawk can be liable for them.

Neither of the cases that Health One relies upon—namely, *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886 (6th Cir. 2016), and *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015)—support a different result here.  In both those cases the defendant in fact hired a fax broadcaster to send out the junk faxes.  *Alco*, 822 F.3d at 888; *Imhoff*, 792 F.3d at 629-30.  And thus in neither case did we hold, or have occasion to hold, that an innocent party—like Bristol or Pfizer here—could by some legal alchemy be held liable for having "sent" the faxes.

The remaining issues amount to housekeeping.  Health One contends that we must assume (for purposes of the motion to dismiss) that Bristol and Pfizer sent the faxes, because the amended complaint alleges they did.  But that allegation is conclusory, *see, e.g.*, Am. Compl. ¶ 59 ("Pfizer . . . sent the faxes"); and Health One otherwise alleges no facts to make plausible

the assertion that Bristol or Pfizer dispatched or otherwise caused the faxes to be sent.  Thus the claims were properly dismissed.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  (It bears mention that the faxes on their face render utterly implausible the idea that Bristol or Pfizer had anything to do with them.)  And Health One's argument as to its conversion claim is derivative of the arguments rejected above.  Hence we need not separately address that claim.

The district court's judgment is affirmed.